IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

EDWARD J. ROBERTS,

Case No. 6:15-cv-01589-CL

Plaintiff,

v.                                                    OPINION AND ORDER

CAROLYN W. COLVIN,
Commissioner of Social Security
Administration,

_____ Defendant.

EDWARD J. ROBERTS
Pro Se

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600
Portland, OR 97204-1011

JORDAN D. GODDARD
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
        Of Attorneys for Defendant

1- OPINION AND ORDER

*Opinion and Order*

CLARKE, Magistrate Judge:

Pro se Plaintiff Edward Joseph Roberts ("Roberts") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is AFFIRMED and the case is DISMISSED.

*Procedural Background*

Roberts filed for DIB and SSI on February 9 and 10, 2012, respectively, alleging disability as of October 19, 2011. Tr. 35. His application was denied initially and upon reconsideration, and a hearing was held on November 14, 2013 before an Administrative Law Judge ("ALJ"); Roberts was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 44-74. On December 13, 2013, ALJ Wynne O'Brien-Persons issued a decision finding Roberts not disabled. Tr. 35-41. Roberts requested timely review of the ALJ's decision and, after the Appeals Council denied his request for review, filed a pro se complaint in this Court. Tr. 6-8.

*Factual Background*

Born in 1958, Roberts was 53 on the disability onset date. Tr. 261. He graduated college with a bachelor's degree in business management, and received an associate's degree in computer programming. Tr. 53. He previously worked as a cashier, sales attendant, and taxi driver. Tr. 41. He alleges disability due to Ehler Danlos Syndrome and back pain. Tr. 208.

*Disability Analysis*

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3- OPINION AND ORDER

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§

4- OPINION AND ORDER

404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## *The ALJ's Findings*

At step one of the sequential evaluation process outlined above, the ALJ found that Roberts had not engaged in substantial gainful activity since the alleged onset date, October 19, 2011. Tr. 37.

At step two, the ALJ determined Roberts had the following severe impairments: self-reported history of Ehlers-Danlos Syndrome; bicuspid aortic valve and aortic root dilation; degenerative disc disease of the cervical spine; minimal facet arthropathy of the lumbar spine. *Id.* The ALJ determined that Roberts' anxiety did not rise to the level of severe. Tr. 38.

At step three, the ALJ found that Roberts' impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 38. Because Roberts did not establish disability at step three, the ALJ continued to evaluate how Roberts' impairments affected his ability to work during the relevant period. The ALJ found Roberts had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a) except he:

can occasionally climb ladders, ropes and scaffolds, can frequently reach overhead with the left upper extremity, can frequently perform fine manipulation bilaterally, and must avoid exposure to pulmonary irritants and workplace hazards.

Tr. 38.

At step four, the ALJ found that Roberts was able to perform his past relevant work as a cashier or sales attendant. Tr. 41. Accordingly, the ALJ concluded Roberts was not disabled under the Act. *Id.*

5- OPINION AND ORDER

## *Standard of Review*

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and his or her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" is "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r*, 554 F.3d 1219, 1222 (9th Cir. 2009) (*quoting Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (*citing Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id. (citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*

## *Discussion*

The Court has a duty to liberally construe a plaintiff's pro se brief. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Roberts alleges the ALJ erred by improperly assessing: (1) Roberts' subjective symptom testimony; (2) Roberts' anxiety at step two; (3) the development of the record; and (4) Roberts' past work at step four.

## I. Roberts' Symptom Testimony

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. Unless there is

6- OPINION AND ORDER

affirmative evidence showing that the claimant is malingering, the ALJ's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick*, 157 F.3d at 724. General findings (e.g., "record in general indicates improvement") are an insufficient basis to support an adverse credibility determination. *Id.* at 722. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Examples of clear and convincing reasons for rejecting Plaintiff's testimony include inconsistencies between her testimony and her conduct; daily activities inconsistent with the alleged symptoms; inadequately explained failure to seek treatment; severity and effect of the symptoms complained of; and the ability to work after allegedly becoming disabled. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Lingenfelter*, 504 F.3d at 1040; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Bray*, 554 F.3d at 1227; *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007).

The ALJ discredited some of Roberts' subjective testimony because he gave differing explanations for why he left his previous job as a taxi driver. Tr. 39. An ALJ may consider a plaintiff's inconsistent statements concerning his symptoms, as well as other testimony that "appears less than candid," when considering his subjective symptom testimony. *Ghanim*, 268 F.3d at 1163. Roberts testified that he lost his job as a taxi driver due to a foot injury. Tr. 54. The ALJ asked what, specifically, kept Roberts from being able to drive a taxi, to which Roberts responded that his foot "goes sideways and I can hit the gas or the brake pedal at the same time." Tr. 54. However, he told the examining psychiatrist Dr. Jason Frizzell that he lost his job because he "was blinded by the sun, and accidentally clipped another vehicle." Tr. 442. The ALJ

7- OPINION AND ORDER

reasonably interpreted the record and found that Roberts made inconsistent statements concerning why he left his job. Tr. 39, 40. As this is a valid rationale for doubting subjective symptom testimony, the ALJ did not err.

The ALJ also questioned Roberts' testimony because his pain was adequately controlled by over-the-counter medications. Tr. 40. Evidence of conservative treatment, including use of over-the counter-medication, is a valid reason to discount a plaintiff's subjective testimony regarding the severity of their symptoms. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Roberts has alleged disabling back pain, among other impairments. However, he primarily took nonprescription medications such as Aleve, Tylenol, or NSAIDs for back pain. Tr. 311, 334, 336. Although Nurse Practitioner Regina Deringer prescribed a non-refillable muscle relaxer and an NSAID, she noted that she could not "reproduce any sort of pain in his lower back." Tr. 331. At the hearing, Roberts was unable to identify any medications he took for his back pain, including over-the-counter medications. Tr. 63. For these reasons, the ALJ did not err by identifying Roberts' conservative course of treatment to support her adverse subjective symptom finding.

In sum, the ALJ's assessment of Roberts' subjective symptom testimony is free from error.[1]

II.    Anxiety at Step Two

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments; step two findings must be based upon medical evidence. 20

---

[1] The ALJ also made a note of Roberts' receipt of unemployment benefits as a reason to negatively view his credibility. Plaintiff challenges this as an error based on information he was given by a lawyer and a phone call to "SSI," and he seeks to ameliorate this fact by offering to pay back the unemployment benefits he received. However, the ALJ did not specifically rely on this fact in his analysis of Roberts' subjective symptom testimony, nor did he actually discredit any specific testimony for this reason. Therefore, even if the ALJ's reliance on the receipt of unemployment benefits was an error, it was harmless because it did not impact the ultimate disability decision. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008).

C.F.R. §§ 404.1520(a); 416.920(a). An impairment is "not severe" if it "does not significantly limit [the claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1521(a); 416.921(a). The step two inquiry is a "threshold inquiry." *Bowen v. Yuckert,* 482 U.S. 137, 153 (1987). When a plaintiff claims a mental impairment, the ALJ is required to "document application of the [Psychiatric Review Technique] in the decision." *Keyser,* 648 F.3d at 725 (quoting 20 C.F.R. § 404.1520a(e)); *see also Dykstra v. Barnhart,* 94 Fed.Appx. 449, 450 (9th Cir. 2004). This technique is reflected in a Psychiatric Review Technique Form ("PRTF"), wherein the reviewer must: 1) "determine whether an applicant has a medically determinable mental impairment"; 2) "rate the degree of functional limitation for four functional areas"; and 3) "determine the severity of the mental impairment (in part based on the degree of functional limitation)." *Keyser,* 648 F.3d at 725 (citing 20 C.F.R. § 404.1520a).

Roberts argues the ALJ erred by failing to find that his anxiety is a severe impairment at step two of the disability evaluation process. The psychological consulting examiner, Dr. Jason Frizzell, P.h.D., diagnosed Roberts with an anxiety disorder. Tr. 444. Roberts reported experiencing significant anxiety when crossing a street, driving, taking public transportation, or straying outside his "comfort zone." Tr. 38, 442. Furthermore, Roberts reported that his anxiety disrupted his sleep and social activities. Tr. 442-43.

The ALJ found that the record failed to show that Roberts' anxiety affected his ability to perform basic work activities. Tr. 38. Roberts rode the bus to his appointment with Dr. Frizzell, and the ALJ noted that Roberts had "not received treatment for any mental health issues" and did not take psychotropic medications. *Id.* The ALJ also noted that Roberts completed the understanding and memory tests with little difficulty, had no problems with sustained concentration and persistence, and his social limitations were entirely self-reported. *Id.*

Roberts argues that the ALJ erred by failing to find his anxiety a severe impairment at step two because Dr. Frizzell diagnosed him with anxiety disorder (NOS). Tr. 444. However, Dr. Frizzell's notes reflect only mild anxiety. Tr. 444. Furthermore, although Dr. Frizzell stated that Roberts experienced anxiety attacks when forced to travel away from home, the record shows that Roberts travelled to his medical appointments using public transportation. Tr. 346, 443. Roberts also walked to the grocery store at least three times per week. Tr. 56-57. Additionally, the record shows that Roberts failed to report symptoms of anxiety to other medical professionals.

Roberts argues that Tracy Nedella, a disability investigation officer, covertly observed anxious behavior while he was walking in traffic. Tr. 346. Ms. Nedella stated that when Roberts crossed the street at an intersection he "kept looking around as if watching for someone." *Id.* However, he was able to cross the street and stand at his bus stop, near traffic, for 15 minutes without showing signs of discomfort. *Id.* Ms. Nedella also stated that Roberts walked "briskly" down the street and across the intersection, showing no signs of hesitation. *Id.* Accordingly, Ms. Nedella's testimony does not establish that Roberts suffered from any more than a minimal impairment.

Roberts also argues that the ALJ incorrectly applied the required psychiatric review technique at steps two and three. When a plaintiff presents a colorable claim of mental impairment, the ALJ must rate and assess the plaintiff's limitations in four functional areas. *Keyser*, 648 F.3d at 725-26. Here, the ALJ assessed Roberts in each of the four functional areas, and found that he had mild restrictions in activities of daily living; social functioning; and concentration, persistence, or pace; and no episodes of decompensation. Tr. 38. Although Roberts argues that the ALJ's proffered evidence for the assessment was insufficient, the ALJ was not required to discuss the reasoning underlying each finding of the four functional

assessments. *See Id.* (The court ruled that a specific finding as to each of the four functional limitations was sufficient).

III.     Failure to Develop the Record

The ALJ in a social security case has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996) *(quoting Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)). This duty extends to the represented as well as to the unrepresented claimant. *Id.* When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring all the relevant facts. *Cox v. Califano,* 587 F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen,* 80 F.3d at 1288; *Armstrong v. Comm'r of Soc. Sec. Admin.,* 160 F.3d 587, 590 (9th Cir. 1998). The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tidwell v. Apfel,* 161 F.3d 599, 602 (9th Cir. 1998); *Smolen,* 80 F.3d at 1288.

Roberts argues that the ALJ erred by failing to request medical opinions from his treating physical therapists, Julie Stone and Thomas Martin. Roberts attended physical therapy for right knee pain in October and November of 2010. Tr. 268-77. Roberts had complained of knee pain following surgery on his right knee, stating that it "locked" once every three to four months, and had buckled once in the previous year. Tr. 268. His knee pain averaged one out of ten on the pain scale, with the worst pain being an eight or nine out of ten. *Id.* By the end of Roberts' month of physical therapy, he noted that his knee pain had been zero out of ten for three days. Tr. 277. Additionally, he stated that he was functioning at full capacity and that he "fast walked to catch

11- OPINION AND ORDER

the bus and had no knee pain." *Id.* Thus, the ALJ did not err by failing to request testimony from Ms. Stone and Mr. Martin because, in the month Roberts attended physical therapy, his knee pain was brought under control and functioned at "100%" capacity. *Id.* Accordingly, the evidence presented was unambiguous and sufficient to determine whether Roberts was able to work. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence" or "the ALJ's own finding that the record is inadequate.").

Roberts also argues that the ALJ erred by failing to request medical opinions from his treating physicians, Drs. Kristen Burkholder and Angelica Macias. Tr. 282-313. Drs. Burkholder and Macias treated Roberts from October 2010 until October 2011, while Roberts worked as a taxi driver. *Id.* Given that neither doctor recommended that Roberts should stop working, nor diagnosed any conditions that would affect Roberts' long term employability, their records are unambiguous. Therefore, the record was sufficiently developed for the ALJ to determine whether Roberts was disabled. *Webb*, 433 F.3d at 687.

IV.   Step Four

At step one, the ALJ determines whether the claimant can engage in substantial gainful activity. 20 C.F.R. §§ 404.1571, 416.971. Substantial gainful activity is work that is performed for pay or profit and that involves significant physical or mental activities. 20 C.F.R. §§ 404.1510, 404.1572, 416.910, 416.972. Earnings that exceed a certain amount, as specified in the regulations, create the presumption of substantial gainful activity. 20 C.F.R. §§ 404.1574, 404.1575(c); *see also Keyes v. Sullivan,* 894 F.2d 1053, 1056 (9th Cir. 1990); *Lewis v. Apfel,* 236 F.3d 503, 515–16 (9th Cir. 2001). The claimant may rebut this presumption with evidence of his inability to perform the job well, without special assistance, or for only brief periods of time. *Keyes,* 894 F.2d at 1056; *see also* 20 C.F.R. § 404.1573.

Roberts argues that the ALJ erred when she decided that he could return to his past work as a sales attendant. Tr. 41. Roberts earned $3,520.90 as a sales attendant in 1999. Tr. 265. Therefore, Roberts argues, his work as a sales attendant did not rise to the level of substantial gainful activity and cannot be considered past work for the purposes of step four. However, Roberts worked as a full-time cashier from 1995 to 2004. Tr. 218-19. Because the ALJ identified the cashier position as past work, any potential error regarding Roberts' sales attendant position is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("We have also deemed legal errors harmless where it was clear they did not alter the ALJ's decision.").

V.    Sentence Six Remand

In order to prevail on a sentence six remand, a plaintiff must demonstrate that the evidence presented is new and material. *Mayes v. Massanari*, 262 F.3d 963 (9th Cir. 2001), as amended, 276 F.3d 453, 462–463 (9th Cir. 2001). He must also demonstrate there is good cause for failing to present the evidence earlier. *Id.* The good cause requirement is met if there is new information that becomes available after the Commissioner's final decision and the claimant could not have obtained the new evidence at the time of the administrative proceedings. *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985).

In order for new evidence to be material, it must "bear directly and substantially on the matter in dispute." *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982). To meet the materiality standard, there must also be a "reasonable possibility" that the new evidence would change the outcome of the administrative hearing. *Booz v. Sec. of Health and Human Services*, 734 F.2d 1378, 1380–1381(9th Cir. 1984).

Roberts submitted additional evidence for the Court's consideration, including medical records from 2005 and photographs of a leg brace prescribed by his current doctor.[2] The medical records from 2005 detail Roberts' foot fracture and show that Roberts' foot appeared "to be healing as expected" and the injury was "amenable to conservative care." Indeed, Roberts worked as a full-time taxi driver from August 2005 until October 2011, which shows that his injury did not hinder his employability. Tr. 217, 221. Therefore, the evidence is not material. *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984) (Material evidence bears "directly and substantially on the matter in dispute."). Similarly, Roberts' ankle brace photographs are not material because no context is given for their purpose and they are unaccompanied by a physician's explanation or diagnosis. Roberts states only that "[i]t should be noted that claimant was issued a [sic] ankle/foot brace by his current primary physician Elmer Parades at peace health harbor medical center in Florence, Or."

Furthermore, a plaintiff seeking a sentence six remand bears the burden of establishing good cause for their failure to submit the evidence in a timely fashion. *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990). Roberts offered no explanation for his failure to submit this evidence in a timely fashion. Therefore, remand is not warranted.

## *Conclusion*

Based on the foregoing, the Commissioner's decision denying Roberts' applications for SSI and DIB is AFFIRMED and this case DISMISSED.

DATED this ᒨ day of December, 2016.

Mark Clarke
United States Magistrate Judge

---

[2] Roberts' brief also alleges that his "medication side effects have him sleeping all day." However, Roberts failed to submit any evidence to support the claim.